**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| TRACY MCPHERSON, on behalf of himself and all others similarly situated,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>AMERICAN BANK SYSTEMS, INC.,<br><br>　　　　　　　Defendant. | Civil Action No. 5:20-cv-01307-G |
| LARRY LYLES, on behalf of himself and all others similarly situated,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>AMERICAN BANK SYSTEMS, INC.,<br><br>　　　　　　　Defendant. | Civil Action No. 5:21-cv-00023-G |

**PLAINTIFFS' UNOPPOSED MOTION FOR FINAL**
**APPROVAL OF CLASS ACTION SETTLEMENT**
**AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................. 1

BACKGROUND ................................................................................................. 2

    A.    Brief Overview of the Litigation ................................................... 2

    B.    Settlement Negotiations ................................................................. 2

    C.    Preliminary Settlement Approval and Implementation of the Court-Approved Notice Plan ................................................................... 3

    D.    Terms of the Settlement ................................................................. 4

        1.    The Settlement Class Definition ......................................... 4

        2.    Direct Benefits to Class Members....................................... 4

        3.    Payment of Notice and Administration Costs, Service Awards, and Attorney's Fees, Costs and Expenses................................................. 5

ARGUMENT ...................................................................................................... 6

    I.    THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE, AND WARRANTS FINAL APPROVAL ................................................. 6

    A.    The Settlement Was Negotiated at Arm's Length ....................... 7

    B.    There Are Numerous Questions of Law and Fact that Place the Outcome of This Case in Doubt ................................................................... 7

    C.    The Value of Immediate Recovery Outweighs Mere Possibility of Future Relief ........................................................................................... 9

    D.    The Parties Believe That the Settlement Is Fair and Reasonable................ 10

    E.    The Proposed Attorneys' Fees Are Reasonable ........................... 11

    II.    FINAL CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE ........................................................................... 12

    A.    The Rule 23(a) Requirements Are Satisfied ............................... 13

    B.    The Requirements of Rule 23(b)(3) Are Satisfied ...................... 15

CONCLUSION .................................................................................................. 16

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

*Amchem Prod., Inc. v. Windsor*,
521 U.S. 591 (1997) ............................................................................................ 12, 15

*Bass v. PJCOMN Acquisition Corp.*,
No. 09-cv-01614-REB-MEH, 2011 WL 2149602 (D. Colo. Jun. 1,
2011) ............................................................................................................................ 14

*CGC Holding Co., LLC v. Hutchens*,
773 F.3d 1076 (10th Cir. 2014) .............................................................................. 15

*Chieftain Royalty Co. v. QEP Energy Co.*, No. CIV-11-212-R, Dkt. No.
182 (W.D. Okla. May 31, 2013) ...............................................................................

*Cimarron Pipeline Constr., Inc. v. Nat'l Council on Compensation Ins.*,
Nos. CIV 89-822-T & CIV-1186-T, 1993 WL 355466 (W.D. Okla. June
8, 1993) ........................................................................................................................ 12

*Colo. Cross Disability Coal. v. Abercrombie & Fitch Co.*,
765 F.3d 1205 (10th Cir. 2014) .............................................................................. 14

*CompSource Okla. v. BNY Mellon, N.A.*,
No. CIV 08–469–KEW, 2012 WL 6864701 (E.D. Okla. Oct. 25, 2012).................. 12

*Dolmage v. Combined Ins. Co. of Am.*,
No. 14 C3809, 2017 WL 1754772 (N.D. Ill. May 3, 2017) ......................................... 8

*Farley v. Family Dollar Stores, Inc.*,
No. 12-cv-00325-RM-MJW, 2014 WL 5488897 (D. Colo. Oct. 30,
2014) ............................................................................................................................ 10

*Gaston v. FabFitFun, Inc.*,
Case No. 2:20-cv-09534-RGK-E, 2021 WL 6496734 (C.D. Cal. Dec. 9,
2021) .............................................................................................................................. 9

*Hammond v. Bank of N.Y. Mellon Corp.*,
No. 08-cv-6060 (RMB) (RLE), 2010 WL 2643307 (S.D.N.Y. June 25,
2010) .............................................................................................................................. 9

*Harris v. Chevron U.S.A., Inc.*,
   Case No. CIV-15-0094-PRW, 2019 WL 5846917 (W.D. Ok. July 29,
   2019) ................................................................................................................ 12

*In re Crocs, Inc. Sec. Litig.*,
   306 F.R.D. 672 (D. Colo. 2014) ...................................................................... 7

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*,
   293 F.R.D. 21 (D. Me. 2013) ........................................................................... 8

*In re Marriott Int'l., Inc., Customer Data Security Breach Litig.*,
   No. 19-md-2879, 2022 WL 1396522 (D. Md. May 3, 2022) ...................... 13

*In re Samsung Top-load Washing Machine Mktg., Sales Prac. and Prod.*
*Liability Litig.*,
   Case No. 17-ml-2792-D, 2020 WL 2616711 (W.D. Okla. May 22,
   2020), *aff'd*, 997 F.3d 1077 (10th Cir. 2021)........................................... 6, 10

*In re Sonic Corp. Customer Data Sec. Breach Litig.*,
   No. 1:17-md-2807, 2019 WL 3773737 (N.D. Ohio Aug. 12, 2019) ............ 8

*In re Target Corp. Customer Data Security Breach Litig.*,
   No. 14-2522, 2015 WL 7253765 (D. Minn. Nov. 17, 2015), *aff'd*, 892
   F.3d 968 (8th Cir. 2018)................................................................................... 8

*In re TJX Cos. Retail Sec. Breach Litig.*,
   246 F.R.D. 389 (D. Mass. 2007) ..................................................................... 8

*Koenig v. Lime Crime, Inc.*,
   Case No. CV 16-503 PSG, 2018 WL 11358228 (C.D. Cal. Apr. 2, 2018) ......... 9

*Linnins v. HAECO Ams., Inc.*,
   No. 1:16CV486, 2018 WL 5312193 (M.D.N.C. Oct. 26, 2018) .................. 8

*Lucas v. Kmart Corp.*,
   234 F.R.D. 688 (D. Colo. 2006) ...................................................................... 7

*Marcus v. Kansas Dep't of Revenue*,
   209 F. Supp. 2d 1179 (D. Kan. 2002)........................................................... 10

*Neiberger v. Hawkins*,
   208 F.R.D. 301 (D. Colo. 2002) .................................................................... 13

*O'Dowd v. Anthem, Inc.*,
    No. 14-CV-02787-KLM-NYW, 2019 WL 4279123 (D. Colo. Sept. 9,
    2019) ...................................................................................................... 10

*Pliego v. Los Arcos Mexican Rest., Inc.*,
    313 F.R.D. 117 (D. Colo. 2016) ................................................... 13, 14, 15

*Rosenbaum v. McAllister*,
    64 F.3d 1439 (10th Cir. 1995) ................................................................. 11

*Rutter & Wilbanks Corp. v. Shell Oil Co.*,
    314 F.3d 1180 (10th Cir. 2002) ........................................................*passim*

*Smith v. Triad of Ala.*, LLC,
    No. 1:14-CV-324-WKW, 2017 WL 1044692 (M.D. Ala. Mar. 17, 2017)................... 8

*DG ex rel. Stricklin v. Devaughn*,
    594 F.3d 1188 (10th Cir. 2010) ............................................................... 13

*Trevizo v. Adams*,
    455 F.3d 1155 (10th Cir. 2006) ............................................................... 13

*United Food & Com. Workers Union v. Chesapeake Energy Corp.*,
    281 F.R.D. 641 (W.D. Okla. 2012)........................................................... 15

*Vaszlavik v. Storage Tech. Corp.*,
    No. 95-B-2525, 2000 WL 1268824 (D. Colo. Mar. 9, 2000) .................... 12

*Wilkerson v. Martin Marietta Corp.*,
    171 F.R.D. 273 (D. Colo. 1997) ..................................................... 7, 8, 11

## STATUTES, RULES AND REGULATIONS

Federal Rules of Civil Procedure
    Rule 23(a)........................................................................... 12, 13, 14
    Rule 23(a)(1) ................................................................................ 13
    Rule 23(a)(2) .......................................................................... 13, 14
    Rule 23(a)(3) ................................................................................ 14
    Rule 23(a)(4) ................................................................................ 14
    Rule 23(b) .................................................................................... 12
    Rule 23(b)(3) ................................................................................ 15
    Rule 23(e) ...................................................................................... 6
    Rule 26 .......................................................................................... 2

iv

**OTHER AUTHORITIES**

MANUAL FOR COMPLEX LITIGATION §21.632 (4th ed. 2014) ........................................... 12

## INTRODUCTION

Plaintiffs Tracy McPherson and Larry Lyles, on behalf of themselves and all others similarly situated, respectfully move for final approval of the proposed class action settlement with Defendant American Bank Systems, Inc. ("ABS" or "Defendant").[1]

On March 8, 2022, the Court preliminarily approved the Settlement as "fair, reasonable, and adequate," preliminarily certified a class for settlement purposes, and directed that notice be disseminated to the Settlement Class. *McPherson*, ECF No. 56. The parties have complied with all of the notice and other requirements in the Court's Preliminary Approval Order. Although the deadline to file claims is not until September 6, 2022, to date, the response from the Settlement Class has been uniformly positive: 1,885 Claim Forms have been submitted, zero Class Members have exercised their ability to object to the Settlement, and only six Class Members have sought to exclude themselves from the Settlement.

As previously laid out by Plaintiffs in their preliminary approval briefing (*McPherson*, ECF No. 48), the Settlement is an excellent result and provides meaningful monetary and injunctive relief for the Class. Plaintiffs submit that the terms of the Settlement are fair, reasonable, and adequate, and satisfy all criteria for final approval. Plaintiffs thus respectfully request that the Court finally approve the Settlement, finally certify the Settlement Class, and enter the Order submitted herewith.

---

[1] Unless otherwise indicated, all capitalized terms have the same meaning as in the Settlement Agreement (*McPherson*, ECF No. 49-1, the "Settlement").

1

## BACKGROUND

### A.    Brief Overview of the Litigation[2]

In November 2020, ABS suffered an intrusion of their data systems by a hacker group, compromising the personally identifying information of members of the Class.  This litigation was subsequently filed, asserting claims against ABS relating to the Data Security Incident.

On March 11, 2021, this Court consolidated the *Lyles* and *McPherson* cases for pretrial purposes and appointed interim co-lead counsel and interim liaison counsel. *McPherson*, ECF No. 40.  The parties conducted initial Rule 26 meetings and initial case management conferences in the actions and case management orders were entered by the Court.  ABS moved to dismiss the *McPherson* action, but that motion was mooted by an amended complaint filed on February 18, 2021.  *McPherson*, ECF No. 41.[3]

### B.    Settlement Negotiations

On April 5, 2021, following mutual exchange of informal mediation discovery and pre-mediation briefs, the parties engaged in a mediation session with retired United States Magistrate Judge Morton Denlow.  *See* previously filed Joint Declaration of Class Counsel Gary F. Lynch and Joseph P. Guglielmo.  *McPherson*, ECF No. 49, ¶8.  With the assistance of the mediator, the parties reached a tentative settlement, with the continuing assistance

---

[2]    The facts and procedural history of the litigation was set forth at length in Plaintiffs' preliminary approval briefing (*McPherson*, ECF No. 48) and briefing in support of Plaintiffs' request for fees, expenses, and service awards (filed concurrently with this motion).

[3]    The claims in a similar action, *Lautman v. American Bank Systems, Inc.*, No. 2:20-cv-1959 (W.D. Pa.), are also being resolved through this Settlement.

of Judge Denlow, the parties negotiated a term sheet.  *Id*.  The parties then negotiated the full terms of the Settlement.  By virtue of arm's-length, good-faith negotiations between the parties, the Settlement maximizes the benefits to Class members and resolves the litigation fully.

**C.    Preliminary Settlement Approval and Implementation of the Court-Approved Notice Plan**

On March 8, 2022, the Court granted Plaintiffs' preliminary approval motion and scheduled a final approval hearing for July 29, 2022.  *McPherson*, ECF No. 56.  Pursuant to the Preliminary Approval Order, the parties implemented the Court-approved Notice Plan in coordination with the Settlement Administrator, Analytics Consulting LLC.  *See* Declaration of Caroline B. Barazesh, ¶¶3-4.  The Settlement Administrator established a Settlement Website, https://absdatasecurityincidentsettlement.com/, operational as of June 16, 2022, where Class Members could obtain important information about the Settlement.  *Id.*, ¶8.  Settlement Class Members are able to file claims both electronically and by mail.  *Id.*.  The Settlement Administrator also established a toll-free telephone number and dedicated email address to allow Class Members to communicate with the Settlement Administrator regarding the Settlement.  *Id*.

ABS submitted to the Settlement Administrator the name, mailing address, and email address (if available), of each known Settlement Class member.  *Id.*, ¶5.  The Settlement Administrator used this data, along with other reasonably available sources, to send an email notice to Settlement Class members for whom an email address was

identified.  *Id.*, ¶9.  The Settlement Administrator sent a mail notice to class members for whom an email address is not identified.  *Id.*

The deadline for Settlement Class Members to request exclusion from or object to the Settlement is June 30, 2022.  To date, the Settlement Administrator has received zero objections and only six requests for exclusion.  *Id.*, ¶12.  The claims deadline is September 6, 2022 and to date, a total of 1,885 Claim Forms have been timely submitted by Settlement Class Members.  *Id.*, ¶11.

### D.   Terms of the Settlement

#### 1.   The Settlement Class Definition

The Court provisionally certified the following Settlement Class[4] for purposes of settlement only:

> All individuals in the United States, and its territories, whose personal-identifiable information was compromised in the Data Security Incident involving ABS which occurred between October and November 2020. Excluded from the Settlement Class are the Court, and any immediate family members of the Court; directors, officers, and employees of Defendant; parents, subsidiaries, and any entity in which Defendant has a controlling interest; and individuals who timely and validly request exclusion from the Settlement Class.

(*McPherson*, ECF No. 56).

#### 2.   Direct Benefits to Class Members

Under the Settlement, ABS will cause payment to be made to all eligible Settlement Class Members who submit approved Documented Loss or Inconvenience Claims. (Settlement, ¶4.3).  For Documented Loss Claims, Settlement Class Members are eligible

---

[4]      ABS does not oppose certification for settlement purposes only.

to receive up to $5,000 if they:  (a) attest that they suffered an out-of-pocket loss as a result of identity theft or fraudulent activity experienced after October 1, 2020, and (b) provide additional documentation to verify their damages.   (Settlement, ¶¶4.5(b)(ii)(1)).   The claims may be subject to proration, if necessary.   Settlement Class Members may submit an Inconvenience Claim by returning a claim form, but no additional documentation is required.  (Settlement, ¶¶4.5(b)(ii)(2)).  Inconvenience Claims will be paid as equal shares of all funds remaining in the settlement fund after deduction of attorneys' fees/expenses, service awards, administration/notice costs, and payment of valid Documented Loss Claims.  *Id.*

In addition to monetary consideration, ABS committed to eliminating the storage of any unencrypted PII on its systems.  (Settlement ¶4.10).  ABS also represented that it has completed significant remediation of its data security practices.  *Id.*

### 3.  Payment of Notice and Administration Costs, Service Awards, and Attorney's Fees, Costs and Expenses

The common fund will also be used to pay the reasonable costs of notice, settlement administration, service awards to the class representatives, attorneys' fees, and reimbursement of litigation expenses/costs.   (Settlement, ¶4.5(a)).   Plaintiffs are concurrently submitting a memorandum of law in support of their Motion for an award of attorneys' fees, costs, expenses and service awards.

## ARGUMENT

## I. THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE, AND WARRANTS FINAL APPROVAL

Under Federal Rule of Civil Procedure 23(e), a court should approve the settlement of a class action if it is "fair, reasonable and adequate," after considering several criteria: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including the timing of payment; and (iv) any agreement made in connection with the proposal."[5]  Fed. R. Civ. P. 23(e).  While the decision of whether to approve a proposed settlement of class action "is committed to the sound discretion of the trial court," the Tenth Circuit has identified four factors that bear on whether a class settlement is fair, reasonable, and adequate:  (1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable.  *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002); *see also In re Samsung Top-load Washing Machine Mktg., Sales Prac. and Prod. Liability Litig.*, Case No. 17-ml-2792-D, 2020 WL 2616711, at *12 (W.D. Okla. May 22, 2020), *aff'd,* 997 F.3d 1077 (10th Cir. 2021).

---

[5]    Plaintiffs indicated in their preliminary approval papers that they were unaware of any side agreements in connection with the Settlement. *McPherson*, ECF No. 49, ¶17.  The parties remain unaware of any such agreements.

## A.     The Settlement Was Negotiated at Arm's Length

Where "the settlement resulted from arm's length negotiations between experienced counsel after significant discovery had occurred, the Court may presume the settlement to be fair, adequate, and reasonable."  *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006).[6]

The Settlement was reached only after months of hard-fought negotiations between the parties, with experienced counsel for all parties, who "'vigorously advocated their [client's] respective positions'" for the duration of the litigation.  *See Lucas*, 234 F.R.D. at 693 (quoting *Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273, 284 (D. Colo. 1997)).

The Settlement was reached with the further assistance and guidance of an experienced neutral.  Specifically, the parties participated in a full-day mediation before the Hon. Morton Denlow (Ret.) of JAMS and follow-up settlement conferences among the Parties and with Judge Denlow.  (Settlement, ¶1.5).  The record in the case thus makes clear that the first *Rutter* factor is satisfied.  *See In re Crocs, Inc. Sec. Litig.*, 306 F.R.D. 672, 691 (D. Colo. 2014) (approving settlement where it was the result of arm's length negotiations and reached with the assistance of experienced mediators).

## B.     There Are Numerous Questions of Law and Fact that Place the Outcome of This Case in Doubt

The second *Rutter* factor asks whether "serious questions of law and fact . . . plac[ed] the ultimate outcome of the litigation in doubt."  *Rutter*, 314 F.3d at 1188.

---

[6]     Unless otherwise noted, citations are omitted and emphasis is added.

Data breach cases, such as this one, are especially risky, expensive, and complex. *See In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 1:17-md-2807, 2019 WL 3773737, at *7 (N.D. Ohio Aug. 12, 2019) ("Data breach litigation is complex and risky. This unsettled area of law often presents novel questions for courts. And of course, juries are always unpredictable."). Because the "legal issues involved in [data breach litigation] are cutting-edge and unsettled . . . many resources would necessarily be spent litigating substantive law as well as other issues." *In re Target Corp. Customer Data Security Breach Litig.*, No. 14-2522 (PAM/JJK), 2015 WL 7253765, at *2 (D. Minn. Nov. 17, 2015), *aff'd*, 892 F.3d 968 (8th Cir. 2018).

Beyond the merits, class certification is challenging in any case. Notably, "[a]s of May 2018, nationwide only one data breach consumer class had been certified." *Linnins v. HAECO Ams., Inc.*, No. 1:16CV486, 2018 WL 5312193, at *2 (M.D.N.C. Oct. 26, 2018) (referring to *Smith v. Triad of Ala.*, LLC, No. 1:14-CV-324-WKW, 2017 WL 1044692, at *16 (M.D. Ala. Mar. 17, 2017)).[7] Although Plaintiffs are confident that they could overcome ABS's defenses, they concede that success is not guaranteed. *See*, *e.g.*, *Wilkerson*, 171 F.R.D. at 285 ("the one constant about litigation . . . is that the ultimate jury result is uncertain, unknown and unpredictable"). Plaintiffs recognize that there are also significant risks associated with obtaining class certification and prevailing on a motion for

---

[7]     Indeed, some courts to consider class certification motions in data breach cases have denied class certification. *See*, *e.g.*, *Dolmage v. Combined Ins. Co. of Am.*, No. 14 C3809, 2017 WL 1754772, at *10 (N.D. Ill. May 3, 2017) (class certification denied); *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21, 33 (D. Me. 2013) (same); *In re TJX Cos. Retail Sec. Breach Litig.*, 246 F.R.D. 389, 397-98 (D. Mass. 2007) (same).

summary judgment.  *Hammond v. Bank of N.Y. Mellon Corp.*, No. 08-cv-6060 (RMB) (RLE), 2010 WL 2643307, at \*14 (S.D.N.Y. June 25, 2010) (granting summary judgment for defendant in data breach case).

Given the risks of continued litigation in this matter, the Settlement delivers an immediate, real, and substantial result that fairly, reasonably, and adequately addresses the situation confronting Class Members while eliminating lengthy, uncertain, and expensive litigation.  This factor supports final approval.

**C.    The Value of Immediate Recovery Outweighs Mere Possibility of Future Relief**

The third *Rutter* factor asks "whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation."  *Rutter*, 314 F.3d at 1188.

The Settlement will provide Class Members with significant and timely benefits which compare favorably to what Class Members could recover were they to secure a favorable judgment at trial.  The per capita recovery of approximately $3.07 compares favorably with per-capita cash recoveries in numerous other data breach settlements.  In addition to the examples provided in Plaintiffs' preliminary approval papers, *see also*, *e.g.*, *Gaston v. FabFitFun, Inc.*, Case No. 2:20-cv-09534-RGK-E, 2021 WL 6496734 (C.D. Cal. Dec. 9, 2021) (approving data breach settlement with per capita recovery of $1.42); *Koenig v. Lime Crime, Inc.*, Case No. CV 16-503 PSG (JEMx), 2018 WL 11358228 (C.D. Cal. Apr. 2, 2018) (approving data breach settlement with per capita recovery of $1.05).

Additionally, the injunctive relief regarding ABS's data security practices provides further substantial non-monetary benefits to Class Members.  *See O'Dowd v. Anthem, Inc.*, No. 14-CV-02787-KLM-NYW, 2019 WL 4279123, at *18 (D. Colo. Sept. 9, 2019) (injunctive relief provides "substantial non-monetary benefits" to the class).  The forward-looking relief provided by the Settlement is particularly valuable because Defendant commits to significant security measures and protection of personal information.  This benefit is available to all Class Members, regardless of whether they submit a monetary claim.

Were this litigation to continue, there is no guarantee that Class Members would ever see any relief for their claims, whether monetary or non-monetary.  The immediate and substantial benefits provided by the Settlement weigh in favor of final approval.

### D.    The Parties Believe That the Settlement Is Fair and Reasonable

The final *Rutter* factor considers the parties' view of the settlement.  *Rutter*, 314 F.3d at 1188.  In determining whether a proposed Settlement is fair, reasonable and adequate, the judgment of plaintiff's counsel is entitled to significant weight by the Court. *See Samsung*, 2020 WL 2616711, at *18; *see also Farley v. Family Dollar Stores, Inc.*, No. 12-cv-00325-RM-MJW, 2014 WL 5488897, at *3 (D. Colo. Oct. 30, 2014).  Where, as here, "a settlement is reached by experienced counsel after negotiations in an adversarial setting, there is an initial presumption that the settlement is fair and reasonable." *Marcus v. Kansas Dep't of Revenue*, 209 F. Supp. 2d 1179, 1182 (D. Kan. 2002).

Class Counsel include attorneys who have substantial experience serving as counsel in numerous complex class actions, including in other data breach cases.  *See* Jt. Decl.,

ECF No. 49.  Based on their understanding of the facts and the applicable law, and after fully evaluating the strengths and weaknesses of the case, Class Counsel fully endorse the Settlement as fair, reasonable, and adequate to the Settlement Class.  Given their experience and success in prosecuting class actions, their judgment is entitled to substantial weight.  *Id.*; *see also Wilkerson*, 171 F.R.D. at 288-89.

Finally, the positive reaction of the Settlement Class to the Settlement further favors approval by the Court.  As of this filing, a total of 1,885Claim Forms were submitted by Class Members.  Barazesh Decl., ¶11.  To date, there have been zero objections and only six Class Members have requested exclusion.  *Id.*, ¶¶12, 13.  This factor weighs in favor of final approval.  *Rutter*, 314 F.3d at 1188 (noting that the district court did not abuse its discretion in approving a class settlement from which an "extremely small percentage of class members opted out.").

### E.    The Proposed Attorneys' Fees Are Reasonable

Plaintiffs' application for attorneys' fees and expenses (submitted concurrently) explains in detail why the amount requested is reasonable and modest in light of the work completed by Class Counsel and the result achieved.  Plaintiffs request no more than 30% percent of the common fund created by the Settlement.  Examining the percentage of the common fund is an acceptable method of evaluating the reasonableness of requested attorney's fees.  *Rosenbaum v. McAllister*, 64 F.3d 1439, 1445 (10th Cir. 1995).  An award of 30% of the settlement value is well within the range of acceptable fee awards in common fund cases.  *See*, *e.g.*, *Chieftain Royalty Co. v. QEP Energy Co.*, No. CIV-11-212-R, Dkt. No. 182 at *6 (W.D. Okla. May 31, 2013) (awarding a fee of $46.5 million, which

represented approximately 39% of the cash portion of a $155 million settlement); *CompSource Okla. v. BNY Mellon, N.A.*, No. CIV 08–469–KEW, 2012 WL 6864701 (E.D. Okla. Oct. 25, 2012) ("25% is on the low end of the range of acceptable fee awards in common fund cases, which ranges between 22% and 37%, and more in some cases"); *Vaszlavik v. Storage Tech. Corp.*, No. 95-B-2525, 2000 WL 1268824, at *4 (D. Colo. Mar. 9, 2000) ("A 30% common fund fee award is in the middle of the ordinary 20%-50% range and is presumptively reasonable."); *Cimarron Pipeline Constr., Inc. v. Nat'l Council on Compensation Ins.*, Nos. CIV 89-822-T & CIV-1186-T, 1993 WL 355466, at *2 (W.D. Okla. June 8, 1993) ("Fees in the range of 30-40% of any amount recovered are common in complex and other cases taken on a contingent fee basis.").

## II.   FINAL CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE

When a settlement is reached before certification, a court must determine whether to certify the settlement class. *See, e.g.*, MANUAL FOR COMPLEX LITIGATION §21.632 (4th ed. 2014); *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 613-14 (1997). Certification of a settlement class is proper when the requirements of Rule 23(a) and at least one subsection of Rule 23(b) are satisfied. *See, e.g.*, *Harris v. Chevron U.S.A., Inc.*, Case No. CIV-15-0094-PRW, 2019 WL 5846917, at *2 (W.D. Ok. July 29, 2019). The Court previously provisionally certified the Settlement Class based on these criteria, and final settlement class certification is warranted for the same reasons.

### A.    The Rule 23(a) Requirements Are Satisfied

*Numerosity:*    Rule 23(a)(1) requires that a proposed settlement class be "so numerous that joinder of all class members is impracticable."  Fed. R. Civ. P. 23(a)(1). Some courts have held that numerosity may be presumed at a certain number; the Tenth Circuit, however, "has never adopted such a presumption."  *Trevizo v. Adams*, 455 F.3d 1155, 1162 (10th Cir. 2006).   In determining whether a proposed class meets the numerosity requirement, "the exact number of potential members need not be shown," and a court "may make 'common sense assumptions' to support a finding that joinder would be impracticable." *Neiberger v. Hawkins*, 208 F.R.D. 301, 313 (D. Colo. 2002).  Courts in the Tenth Circuit have determined that numerosity has been satisfied where classes consisted of 50 or 100 members.  *See Pliego v. Los Arcos Mexican Rest., Inc.*, 313 F.R.D. 117, 126 (D. Colo. 2016) (collecting cases). Here, the proposed class consists of approximately 554,000 individuals.  As such, the numerosity requirement is easily met.

*Commonality:*  Rule 23(a)(2) requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  A finding of commonality requires only a single common question of law or fact.  *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1195 (10th Cir. 2010).

In this case, Class Members share multiple issues of law and fact. Data breach cases easily satisfy the commonality requirement.  *See, e.g.*, *In re Marriott Int'l., Inc., Customer Data Security Breach Litig.*, No. 19-md-2879, 2022 WL 1396522, at *9-10 (D. Md. May 3, 2022).  Given the near complete overlap in factual and legal claims across the Class, the commonality requirement is easily met here.

13

*Typicality*:  Rule 23(a)(3) requires that the claims asserted by a plaintiff on behalf of a class be typical of the claims of other class members.  Fed. R. Civ. P. 23(a)(2).  "A plaintiff's claim is typical of class claims if it challenges the same conduct that would be challenged by the class."  *Pliego*, 313 F.R.D. at 126 (quoting *Bass v. PJCOMN Acquisition Corp.*, No. 09-cv-01614-REB-MEH, 2011 WL 2149602, at *3 (D. Colo. Jun. 1, 2011)).  "[D]iffering fact situations of class members do not defeat typicality under Rule 23(a)(3) so long as the claims of the class representative and class members are based on the same legal or remedial theory."  *Colo. Cross Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1216 (10th Cir. 2014).  Here, the Plaintiffs' and Class Members' claims arise from the same Data Security Incident and same alleged course of conduct by Defendant. The typicality requirement is satisfied.

*Adequacy of Representation*:  Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  The Tenth Circuit has identified two questions relevant to the adequacy of representation inquiry:  (i) whether the named plaintiffs and their counsel have any conflicts with other class members; and (ii) whether the named plaintiffs and their counsel will vigorously prosecute the action on behalf of the class.  *See Rutter,* 765 F.3d at 1187-88.  Plaintiffs' interests in this litigation are aligned with, and not antagonistic to, those of the Settlement Class as they all seek to recover for the harm they incurred as a result of the data breach. Similarly, Class Counsel are competent and experienced counsel who have invested considerable time and resources into the prosecution of this action.  Accordingly, the adequacy of representation requirement of Rule 23(a) is satisfied.

14

### B.      The Requirements of Rule 23(b)(3) Are Satisfied

*Predominance:*   Rule 23(b)(3) requires that questions of law or fact common to class members predominate over any questions affecting only individual members.  *Pliego*, 313 F.R.D. at 126 (citing Fed. R. Civ. P. 23(b)(3)).  The predominance test is easily met in cases alleging consumer violations.  *United Food & Com. Workers Union v. Chesapeake Energy Corp.*, 281 F.R.D. 641, 655-56 (W.D. Okla. 2012) (quoting *Amchem*, 521 U.S. at 625).  Predominance is satisfied here because questions common to all Class Members substantially outweigh any possible issues that are individual to the Class Members.

*Superiority***:**  The Rule 23(b)(3) also requires that a class resolution be "superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  In this regard, the superiority requirement asks the court to weigh the fairness and efficiency of a class action against alternative methods of adjudication.  *See CGC Holding Co., LLC v. Hutchens*, 773 F.3d 1076, 1096 (10th Cir. 2014).

Common questions comprise a substantial aspect of the case and can be resolved for all Class Members in a single adjudication — obviating the need for multiple trials in multiple venues.  Further, for most Class Members, individual damages are likely to be too small to pursue individually, making the class action the superior method of adjudication.  *Pliego*, 313 F.R.D. at 127 (a class action is superior where the small claims of parties with limited resources are otherwise unlikely to be pursued).

15

## <u>CONCLUSION</u>

For the reasons set forth above, Plaintiffs respectfully request that this Court grant final approval of the Settlement, finally certify the Settlement Class, and enter the Order submitted herewith.

Dated: June 16, 2022

Respectfully submitted,

*s/ Joseph P. Guglielmo*
Joseph P. Guglielmo
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
230 Park Avenue, 17th Floor
New York, New York 10169
Tel.: (212) 223-6444
jguglielmo@scott-scott.com

Gary F. Lynch
Jamisen A. Etzel
**CARLSON LYNCH, LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, Pennsylvania 15222
Tel.: (412) 322-9243
glynch@carlsonlynch.com
jetzel@carlsonlynch.com

**FEDERMAN & SHERWOOD**
William B. Federman, OBA #2853
Molly E. Brantley, OBA #33126
Tyler J. Bean, OBA #33834
10205 N. Pennsylvania Avenue
Oklahoma City, Oklahoma 73120
Tel.: (405) 235-1560
wbf@federmanlaw.com
meb@federmanlaw.com
tjb@federmanlaw.com

**WOOD LAW FIRM, LLC**
E. Kirk Wood
P. O. Box 382434
Birmingham, Alabama 35238-2434
Tel.: (205) 908-4906

ekirkwood1@bellsouth.net

**GREG DAVIS LAW FIRM, LLC**
Greg L. Davis
7031 Halcyon Park Drive
Montgomery, Alabama 36117
Tel.: (334) 832-9080

*Counsel for Plaintiffs*

17